## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

In re:  Application of CHEMPLAST STEEL
INDUSTRIES METALS, LTD. and
SOUTHERN PROCUREMENT SERVICES
LTD. for Assistance Before Foreign Tribunals

Case No.:____2:18-mc-00144____

_____/

## VERIFIED APPLICATION PURSUANT TO 28 U.S.C. § 1782
## FOR ORDER TO TAKE DISCOVERY IN AID OF FOREIGN
## PROCEEDINGS AND SUPPORTING MEMORANDUM OF LAW

Applicants, Chemplast Steel Industries Metals, LTD. ("Chemplast") and Southern

Procurement Services LTD. ("SPS"), hereby apply for an order pursuant to 28 U.S.C. § 1782

authorizing Applicants' counsel to issue the subpoena *duces tecum* attached hereto as **Ex. 1**,

requiring Castleton Commodities International LLC ("CCI") to produce documentary and

testimonial evidence for use in existing criminal investigations in the Bolivarian Republic of

Venezuela ("Venezuela"), as well as for Applicants' use in imminent arbitration proceedings that

will be commenced in Switzerland.

The requested discovery relates to a 2017 Purchase and Sale Agreement (ELE18102017)

("Purchase Agreement") between Applicants and Elemento, Ltd. ("Elemento").  As detailed in

this Application, the requested discovery is relevant to an ongoing criminal investigation against

CCI, Elemento, and others in Venezuela.  Specifically, the requested evidence relates to CCI's

role in possible illegal acts committed by Elemento and/or others, which could include the

deviation of Purchase Agreement shipments and the submission of fraudulent shipping

documentation, among other actions.

Similarly, the requested third-party discovery is relevant to the aforementioned Swiss arbitration proceedings, as it will confirm the extent of CCI's involvement in Elemento's breach of the Purchase Agreement.  As demonstrated below, Elemento frequently operated under CCI's name during the performance of its duties under the Purchase Agreement and included CCI in discussions and activities relating to Elemento's performance of the Purchase Agreement.

In light of the foregoing, discovery relating to (i) the ongoing criminal investigation; (ii) CCI's communications with Venezuelan government entities concerning the Purchase Agreement; and (iii) CCI's role in the negotiation, performance, and breach of the Purchase Agreement are relevant and essential to the outcome of the proceedings in Venezuela and Switzerland.

Applicants' request for discovery seeks important information held by an entity in the United States over which neither the Venezuelan government nor a foreign tribunal have power. Because Applicants' request for discovery satisfies all the requirements of 28 U.S.C. § 1782 ("Section 1782"), this Application should be granted.

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1782.

2.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1782 because CCI is found within this District.

3.     This Court has personal jurisdiction over CCI for the purpose of this Application, as CCI is registered to conduct business in West Virginia, does indeed transact business in West Virginia, and owns property and maintains facilities in West Virginia.

## PARTIES

4.     Chemplast is a company existing under the laws of Nevis that specializes in supply management and product exchanges for various oil, refining, mining, metallurgical, and petrochemical industries.  SPS is a company existing under the laws of the United Kingdom that provides a complete range of procurement services to assist industry processes at the supply chain level, including in the oil industry.

5.     CCI is registered to conduct business in West Virginia, does indeed transact business in West Virginia, and owns properties and maintains facilities in the state of West Virginia.  CCI's designated notice of process agent is Corporation Service Company, 209 West Washington Street, Charleston, West Virginia, 25302.

## STATEMENT OF FACTS

6.     Prior to October 18, 2017, Applicants met with CCI regarding the possibility of entering into an agreement with CCI and/or Elemento regarding the sale and shipment of certain crude oil and petroleum products.  E. Ugueto Decl. (**Ex. 2**), at ¶ 5.  During its discussions with Applicants, CCI underscored that Elemento was CCI's exclusive representative in Venezuela, and assured Applicants that Elemento was a reputable business partner.  *Id.*

7.     Relying, in part, on CCI's representations, Applicants entered into and executed the Purchase Agreement with Elemento on October 18, 2017, under which Applicants sold certain crude oil and petroleum cargo to Elemento and Elemento agreed to deliver the cargo to specific ports in the United States.  *Id.* at ¶ 6.

8.     Elemento failed to comply with its obligations under the Purchase Agreement. Specifically, Elemento—with the knowledge and assistance of CCI—repeatedly and wrongfully re-routed certain shipments of Venezuelan petroleum provided by Applicants pursuant to the

Purchase Agreement.  *Id.* at ¶ 8.  Thereafter, Elemento presented forged documents to Petróleos de Venezuela, S.A. ("PDVSA"), the Venezuelan state-owned oil and natural gas company, in an effort to conceal the true destinations of these shipments.  *Id.*  The forged documents inaccurately represented that Elemento had delivered its cargo to the proper (and contractually compliant) destination.  *Id.*  While breaching its duties under the Purchase Agreement, Elemento frequently operated under CCI's name and even included CCI (and CCI-related entities) in discussions and activities relating to the Purchase Agreement.  *Id.* at ¶ 6.  Upon information and belief, CCI and its executives improperly benefitted from and acted in concert with Elemento. *Id.* at ¶ 9.

9.    The Venezuelan government has since become aware of the above wrongful acts. The Office of the Attorney General of Venezuela is currently conducting an ongoing criminal investigation of Elemento, CCI, and others in relation to their respective roles in the potentially illicit re-routing scheme and forgery of documents; this investigation may lead to criminal charges against Elemento, CCI, and others.  *Id.* at ¶ 10.  Through this Application, Applicants seek additional information to provide to the Venezuelan authorities relating to the wrongful acts of Elemento and/or CCI.  Applicants have already provided information to the Venezuelan authorities confirming that Applicants had no involvement in Elemento's re-routing of shipments under the Purchase Agreement and submission of forged documentation.  *Id.* at ¶¶ 11-12.

10.    In addition to improperly re-routing certain cargo shipments, Elemento failed to pay Applicants amounts due under the Purchase Agreement.  Despite numerous representations that payment would be forthcoming, Elemento failed to satisfy its debt.  As of April 6, 2018, Elemento continued to owe Applicants over $7.4 million.

11.     Elemento explicitly admitted its payment breach to Applicants and, on that basis, entered into a Confidential Settlement Agreement with Applicants on or around May 1, 2018. The Confidential Settlement Agreement represented an attempt by Applicants to recoup the amounts that Elemento admitted were owed and memorialized Elemento's agreement to pay its debt in monthly installments over a designated period of time.

12.     In breach of its obligations, Elemento failed to make any payments under the Confidential Settlement Agreement, even though all payments were due by July 31, 2018. Pursuant to the terms of the Confidential Settlement Agreement, Applicants are now entitled to collect the sums due under the Purchase Agreement because Elemento has failed to fully observe all conditions of the Confidential Settlement Agreement.[1]

13.     Due to Elemento's continued refusal to meet its payment obligations, Applicants have commenced dispute resolution proceedings in accordance with the Confidential Settlement Agreement.  The Confidential Settlement Agreement requires the parties to first seek a resolution through mediation.  If no resolution has been reached within sixty days from the date on which a mediator is confirmed, Applicants must commence arbitration proceedings in Geneva, Switzerland.  The mediator was confirmed on August 3, 2018.  It is not expected, however, that mediation will resolve the dispute.  As such, arbitration between Applicants and Elemento is imminent and will likely commence shortly after the mediation proceedings are closed.  This Application seeks documents that are necessary to the outcome of the imminent arbitration proceedings, as these documents may indicate whether CCI may be joined and the extent of Elemento's liability for its breach, among others.

---

[1]      Given that the Confidential Settlement Agreement contains a confidentiality clause, Applicants have not attached the Confidential Settlement Agreement to this Application in an abundance of caution.   Nonetheless, if the Court deems necessary a review of the Confidential Settlement Agreement, Applicants shall seek leave to file the agreement under seal.

14.     In connection with the dispute between Applicants and Elemento, counsel for Applicants requested CCI on June 19, 2018, to provide "all documents in CCI's possession concerning the Purchase and Sale Agreement [between Applicants and Elemento] and Elemento's performance thereunder."  R. Lorenzo Decl. (**Ex. 3**), at ¶ 4; Letter from R. Lorenzo to CCI (June 19, 2018), at 1 (**Ex. 4**).  Counsel also requested that CCI "preserve all communications or documents in its possession regarding the Purchase and Sale Agreement and Elemento's performance thereunder."  *Id.*

15.     On July 2, 2018, CCI responded to Applicants' counsel and "declin[ed] . . . to provide . . . documentation relating to any dealings [CCI] may have had with Elemento."  R. Lorenzo Decl. (**Ex. 3**), at ¶ 6; Letter from M. Keats to R. Lorenzo (July 2, 2018), at 2 (attached hereto as **Ex. 5**).  CCI's response (sent by counsel for CCI) failed to confirm whether CCI would preserve its communications or documents relating to the Purchase and Sale Agreement and Elemento's performance thereunder.  Accordingly, this Application also seeks documents that CCI has refused to provide.

16.     In short, and as set forth above, CCI was aware of and assisted Elemento in its breach of the Purchase Agreement; Elemento frequently operated under CCI's name while performing its duties under the Purchase Agreement; Elemento included CCI in communications and discussions relating to the Purchase Agreement; Elemento and CCI members acted in concert with relation to the wrongful re-routing of ships and forgery of documentation; Venezuela's Office of the Attorney General is currently conducting a criminal investigation into CCI's and Elemento's roles in the wrongful re-routing of ships and forgery of documentation; and the Attorney General's investigation may lead to criminal charges.  Accordingly, Applicants understand that CCI maintains in its custody valuable information relating to:  (i) the ongoing

criminal investigation against CCI; (ii) CCI's communications with Venezuelan government entities concerning the Purchase Agreement; and (iii) CCI's role in the negotiation, performance, and breach of the Purchase Agreement.

17.    As such, Applicants seek discovery from CCI as part of their efforts to obtain relief from the appropriate tribunals regarding CCI's role in Elemento's scheme and Elemento's failure to meet its payment obligations.

## ARGUMENT

18.    Section 1782 "provides 'federal-court assistance in the gathering of evidence for use in foreign tribunals.'"  *Oncology Found. v. Avanza Dev. Servs., LLC*, No. PX 17-1445, 2017 WL 2376769, at *1 (D. Md. May 30, 2017) (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004)).  Section 1782 allows, *inter alia*, any "interested person" to a legal proceeding outside the United States to apply to a United States federal district court to obtain evidence for use in the foreign proceeding.  *See* 28 U.S.C. § 1782.

19.    A federal district court is authorized to grant a Section 1782 application if certain statutory requirements are met.  A district court maintains the discretion to grant discovery and must weigh four factors in determining whether to exercise its discretion.  *See In re Chevron Corp.*, No. 7:10-mc-00067, 2010 WL 4883111, at *2 (W.D. Va. Nov. 24, 2010).  Overall, district courts "must exercise their discretion under § 1782 in light of the twin aims of the statute:  'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts[.]'"  *In re Request for Judicial Assistance from the Dist. Court in Svitavy, Czech Republic*, 748 F. Supp. 2d 522, 525 (E.D. Va. 2010) (citations omitted).

20.     Notably, Section 1782 does not require an applicant to "satisfy the statutory requirements for each foreign proceeding for which he or she wishes to use the requested discovery." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 133-35 (2d Cir. 2017).  Applicants need only satisfy the statutory requirements with respect to one of the applicable proceedings. *See id.*

### A.     Section 1782's Statutory Requirements Are Met

21.     A district court may grant a Section 1782 application when the following statutory requirements are satisfied:  "(1) the person from whom discovery is sought resides or is found in the [relevant district]; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the application is made by a foreign or international tribunal or 'any interested person.'"  *In re Request for Judicial Assistance from the Dist. Court in Svitavy, Czech Republic*, 748 F. Supp. 2d at 525 (internal citations omitted).  In the instant case, Section 1782's requirements are satisfied.

#### 1.     CCI is Found in this District

22.     Under Section 1782, a corporation may be found, *inter alia*, where it is "incorporated, headquartered, or conduct[s] systematic business activities[.]"  *See In re Application of Inversiones y Gasolinera Petroleos Valenzuela, S. de R.L.*, No. 08-20378-MC, 2011 WL 181311, at *7 (S.D. Fla. Jan. 19, 2011).  CCI conducts systematic business activities in West Virginia.  CCI is registered to conduct business in West Virginia and owns property and maintains facilities in West Virginia.  As such, CCI is "found" in this District for purposes of Section 1782.  *See id.*

> **2.** **The Requested Discovery is "For Use In" Ongoing Criminal Proceedings in Venezuela and "For Use In" Reasonably Contemplated Arbitration Proceedings in Switzerland**

23.     Section 1782 discovery is available "for use in a proceeding in a foreign or international tribunal," a category that includes foreign criminal investigations "conducted prior to a formal accusation." *See* 28 U.S.C. § 1782; *Intel*, 542 U.S. at 259. The category also includes arbitral proceedings, on the basis that "arbitral bodies" constitute foreign tribunals because they "are created by treaty and not by private parties[.]" *In re Chevron Corp.*, 753 F. Supp. 2d 536, 539 (D. Md. 2010).

24.     District courts have found that Section 1782 discovery is available even when the applicant is not a party to nor has a claim for relief in an investigation. *In re Accent Delight*, 869 F.3d at 132. Indeed, Section 1782 discovery is available as long as the applicant has "the ability to inject the requested information into a foreign proceeding and the requested discovery is something that will be employed with some advantage or serve some use in the proceeding." *In re Ferrer*, No. 18-20226-CIV-O'SULLIVAN, 2018 WL 3240010, at *5 (S.D. Fla. July 3, 2018) (internal quotation marks and citation omitted).

25.     In the instant matter, the Venezuelan government has initiated a criminal investigation regarding CCI's and Elemento's role in the re-routing of cargo under the Purchase Agreement and forging of documents related to the re-routing of cargo. CCI's communications and documents relating to such conduct and its relationship with Elemento are the type of information that the Venezuelan government needs in order to assess whether CCI or Elemento committed any wrongdoing related to the Purchase Agreement and further establish that Applicants played no role therein. *See In re Mangouras*, No. 17-mc-172, 2017 WL 4990655, at *5 (S.D.N.Y. Oct. 30, 2017) (noting that an investigation in which an injured party may provide

investigators overseeing a criminal inquiry with relevant information is "exactly the type of proceeding" that Section 1782 is "intended to reach").  Under this type of proceeding in Venezuela, an injured party is able to provide the government with relevant information to the criminal allegations or criminal acts for use in ongoing proceedings.  As such, the requested information is "for use" in the foreign investigation.  *Id*.

26.     The "foreign proceeding" requirement may also be met when the discovery sought is for use in a legal proceeding that is "within reasonable contemplation."  *Intel*, 542 U.S. at 247 ("'proceeding' for which discovery is sought under § 1782(a) must be in reasonable contemplation, but need not be 'pending' or 'imminent'").  In this instance, the Swiss arbitration proceedings are "within reasonable contemplation" because there is a reasonable belief that mediation will not resolve the matter.  *See In re Setraco Nigeria Ltd.*, No. 3:13-mc-16-32MCR, 2013 WL 1704913, at *2 (M.D. Fla. Apr. 19, 2013) ("Section 1782 is designed to support such contemplated claims, including civil and criminal proceedings to be initiated by a private party in a foreign tribunal, even when said proceedings are contemplated but have not yet commenced.").  Indeed, this case mirrors *Goenechea v. Davidoff*, where the District of Maryland found that foreign proceedings were "within reasonable contemplation" when one party committed multiple contractual violations, the claims at issue could not proceed without first attempting a conciliation process, and the filing party intended to file suit if the conciliation process was not successful.  No. CCB-15-3384, 2016 WL 560689, at *3 (D. Md. Feb. 11, 2016).  Here, as in *Goenechea*, foreign proceedings are "within reasonable contemplation" because Elemento has repeatedly failed to meet its payment obligations, the Confidential Settlement Agreement requires that the parties engage in mediation before arbitration, and Applicants fully intend to initiate arbitration proceedings in the likely event that mediation is not successful.  *See id.*

27.     This prong is also met by the Swiss arbitration because the third-party discovery will be used to support claims in arbitration proceedings that are within reasonable contemplation.  "[W]here an applicant has not yet initiated a foreign proceeding, discovery is available when the materials may help the applicant either to plead or to prove the anticipated claims."  *In re Mangouras*, 2017 WL 4990655, at *5.  Further, the discovery sought from CCI is for use in those proceedings, as Applicants will need to provide the arbitration tribunal with information regarding the criminal investigations against CCI and CCI's relationship with Elemento as it relates to Elemento's breaches, for determinations of liability and of the possible joinder of CCI.  *See Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1271 (11th Cir. 2014) (allowing for Section 1782 discovery when applicants were waiting for evidence to present in civil law proceedings, where evidence must accompany the pleadings).

28.     In short, the discovery at issue is being requested to determine CCI's role in and the scope of Elemento's breach for the purposes of both the Venezuelan criminal investigation and the imminent Swiss arbitration proceedings against Elemento.  As such, there is no doubt that the requested discovery is "for use" in a foreign proceeding.  *Id.* at *2 (holding that applicant's request for third-party discovery was "for use" in a foreign proceeding when the requested discovery sought to establish a third party's involvement in the dispute at hand).  Indeed, information regarding CCI may help Applicants determine CCI's involvement in the dispute and which claims may be raised against CCI.  *See In re Mangouras*, 2017 WL 4990655, at *5.

### 3. Applicant is an "Interested Person" in the Criminal Proceedings in Venezuela and an "Interested Person" in the Reasonably Contemplated Arbitration Proceeding in Switzerland

29.     Applicants are "interested persons" for purposes of the Venezuelan investigation and the Swiss arbitration. *See Intel*, 542 U.S. at 257 (noting that "any interested person" is "intended to include not only litigants before foreign or international tribunals, but also foreign and international officials as well as any other person whether he be designated by foreign law or international convention or merely possess a reasonable interest in obtaining the assistance").

30.     With relation to the Swiss arbitration, Applicants are clearly "interested persons" because they will be parties to the reasonably contemplated arbitration proceedings. *See id.* at 256 (noting that "litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782"); *Goenechea*, 2016 WL 560689, at *3 (noting that a party to a dispute is an "interested person").

31.     Applicants are also "interested persons" to the Venezuelan investigation because the text of Section 1782 also "plainly reaches beyond the universe of persons designated 'litigant.'" *Intel*, 542 U.S. at 242.  Indeed, non-parties, like Applicants, who provide information in criminal investigations and who have procedural rights to inject information into those matters "possess[] a reasonable interest in obtaining [judicial] assistance . . . [and] qualif[y] as an 'interested person' within any fair construction of that term." *Id.* at 256 (internal quotation marks and citation omitted).  *See also In re Accent Delight*, 869 F.3d at 131 ("Section 1782 explicitly permits district courts to grant discovery in aid of 'criminal investigations conducted before formal accusation.'").

32.     In this case, Applicants possess a "reasonable interest" in obtaining judicial assistance to acquire information related to the Purchase Agreement as signatories to that

Agreement; persons harmed by CCI's and Elemento's actions; and as entities that are impacted by CCI's and Elemento's wrongdoing. *See Intel*, 542 U.S. at 256; *In re Pioneer Corp. for an Order Permitting Issuance of Subpoenas to Take Discovery in a Foreign Proceeding*, No. MC 18-0037 UA (SS), 2018 WL 2146412, at *5 (C.D. Cal. May 9, 2018) (recognizing that signatories to breached agreements have a "'reasonable interest' in obtaining judicial assistance to acquire information related to that [a]greement"). As such, Applicants may bring information relating to such wrongdoing to the attention of the Venezuelan government. Further, as entities with the "right to submit information for the [Venezuelan government's consideration]" and with the right to "proceed to court if the [Venezuelan government] discontinues the investigation[,]" Applicants—as non-litigants—are also considered to have a "reasonable interest" in obtaining judicial assistance and must be recognized as "interested persons." *Intel*, 542 U.S. at 256-57 (recognizing that non-litigants with procedural rights may be considered "interested persons" under Section 1782).

33.     Thus, Applicants must be recognized as "interested persons" for purposes of Section 1782 because they are participants to the arbitration and because they have participation rights before the Venezuelan government to inject information relating to CCI into the ongoing criminal proceedings. *See Goenechea*, 2016 WL 560689, at *3 (noting that a party to a dispute is an "interested person"); *In re Furstenberg Fin. SAS*, No. 18-mc-44 (JGK), 2018 WL 3392882, at *6 (S.D.N.Y. July 12, 2018) (finding the participation rights were sufficient to qualify a petitioner as an interested person under *Intel* when petitioner was not a party to the ongoing proceedings).

**B.     A Balancing of the Section 1782 Discretionary Factors Weighs in Favor of Granting the Application for Both the Venezuelan and Swiss Proceedings**

34.     In addition to the above statutory requirements, courts have identified four discretionary factors to consider in assessing a Section 1782 application:  "(1) whether "the person from whom discovery is sought is a participant in the foreign proceeding; (2) the receptivity of the foreign tribunal to U.S. court assistance; (3) whether the § 1782 application is an attempt to 'circumvent foreign proof-gathering restrictions'; and (4) whether the documents and testimony sought are 'unduly intrusive or burdensome.'"  *In re Chevron Corp.*, 2010 WL 4883111, at *2 (citing *Intel*, 542 U.S. at 264-65).  These discretionary factors weigh heavily in favor of granting this Application.

### 1.     *The Discovery Sought Herein is not Available to Applicants in Either Venezuela or Switzerland*

35.     The need for Section 1782 aid generally is greater when the subject of the application is "outside the foreign tribunal's jurisdictional reach;" as such, the first discretionary factor considers whether the evidence is sought from a nonparticipant in the matter arising abroad.  *Intel*, 542 U.S. at 264. The factor also requires that a district court consider whether the foreign tribunal "lacks the power to compel discovery" from a party "located outside" the foreign tribunal's jurisdiction.  *In re Ferrer*, 2018 WL 3240010, at *8.  The two proceedings discussed in this Application meet this prong.

36.     First, CCI, a U.S. corporation, is beyond the jurisdiction of the Venezuelan government and the Venezuelan government lacks the power to compel discovery from CCI, even though the Venezuelan Attorney General's Office has launched criminal investigation against Elemento and CCI for the events related to the deviation of shipments and the forging of documents to hide the true delivery site.  Second, because CCI is not a party to the relevant

14

arbitration agreement between Elemento and Applicants, CCI is outside of the subpoena power of the eventual Swiss tribunal.  *See Goenechea*, 2016 WL 560689, at *3 (finding that the first discretionary factor weighed in favor of discovery when the subject of discovery was a non-party outside the jurisdiction of the court).  In light of the foregoing, the first discretionary factor weighs in favor of granting the relief sought.

### 2.    *The Nature and Receptivity of the Foreign Tribunal*

37.    The second discretionary factor—the nature and receptivity of the foreign tribunals—also weighs in favor of granting the requested discovery.

38.    The Venezuelan government is currently conducting a criminal investigation into, among other things, CCI's role in potential wrongdoing under the Purchase Agreement, which may lead to formal criminal charges.  Accordingly, Venezuela is currently reviewing evidence related to CCI's relationship with Elemento and PDVSA, as well as CCI's role in relation to the Purchase Agreement, the deviation of the related cargoes, and the forgery of documentation.

39.    In addition, the tribunal in Switzerland will soon be asked to consider Applicants' claims, at which time the parties will need to provide evidence for their claims.  In that proceeding, the Swiss arbitral tribunal will consider any evidence that Applicants can provide supporting their claims, including evidence acquired through this Section 1782 Application that confirms the scope of and CCI's role in Elemento's breach of the Purchase Agreement.[2]

---

[2]    Applications for discovery under Section 1782 enjoy a presumption in favor of foreign tribunal receptivity that only can be offset by reliable evidence that the tribunal would reject the evidence.  *See, e.g.*, *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099-1100 (2d Cir. 1995) ("[W]e believe that a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782."); *In re Chevron Corp.*, 753 F. Supp. 2d at 540 (noting that Respondents failed to meet their burden of showing that a foreign court would not be receptive to information obtained in Section 1782 discovery).

40.     Based on the foregoing, the second factor weighs in favor of allowing for Section 1782 discovery because the nature of the proceedings do not "differ in most respect from analogous" proceedings in the U.S.  *In re Servicio Pan Americano de Proteccion, C.A.*, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004).  Furthermore, "Venezuela has indicated its receptivity to federal judicial assistance by its signature of treaties facilitating such cooperation." *Id.*

### 3.     The Application Does Not Circumvent Foreign Proof-Gathering Restrictions and Policies

41.     The third *Intel* factor also weighs in favor of Applicants because they do not seek to circumvent foreign proof-gathering restrictions and policies.

42.     Applicants' request for assistance is not an effort to circumvent the efforts of the Venezuelan government.  To the contrary, Applicants are attempting to collect information that will aid the Venezuelan government in making a decision regarding the open criminal investigation (and potential criminal case) against CCI and/or Elemento.  *In re Ferrer*, 2018 WL 3240010, at *9 (finding that the third *Intel* factor favors an applicant when the body investigating an issue is unable to compel a party to provide evidence outside a foreign territory).

43.     Further, Applicants' request for assistance is not an effort to circumvent Swiss foreign proof-gathering restrictions or other policy restrictions.  Rather, Applicants are trying to timely discover evidence that will assist them in ensuring that their claims are efficiently presented to the arbitral tribunal.  The evidence Applicants seek is held by a non-party that is not a signatory to the relevant arbitration agreement and, as such, is beyond the reach of a Swiss arbitral tribunal's jurisdiction.  *See Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011) (reversing trial court's denial of Section 1782 application and holding that once an applicant "demonstrates a need for extensive discovery" beyond what is allowed in the foreign court, the burden shifts to the opposing litigant to show otherwise).

16

44.      Applicants are properly seeking additional information to provide the Venezuelan government and the Swiss arbitration tribunal through the only appropriate means available to them and, as such, are not circumventing any foreign proof-gathering restrictions or policies.

### 4.      *Discovery Will Not Be Intrusive or Burdensome*

45.      As to the final discretionary factor that must be weighed by this Court, Applicants' proposed subpoena is not unduly intrusive or burdensome.[3]  Instead, the scope of discovery arising out of this Application is in accordance with the Federal Rules of Civil Procedure.  *See* 28 U.S.C. § 1782(a); *In re Judicial Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie Bank Ltd.*, No. 2:14-cv-0797-GMN-NJK, 2014 WL 7706908, at *4 (D. Nev. June 4, 2014) ("The proper scope of discovery arising out of a § 1782 application is generally determined by the Federal Rules of Civil Procedure.").

46.      Applicants have narrowly tailored the subpoena to request only information that is directly relevant to the ongoing criminal investigation in Venezuela and to the imminent arbitration proceedings in Switzerland.  Other courts have found similar discovery requests for use in foreign proceedings are neither unduly intrusive nor burdensome.  *See, e.g.*, *In re Ferrer*, 2018 WL 3240010, at *10-11 (finding that "financial and corporate documents and related testimony" that are "relevant and go to the heart of the . . . [c]ase" meet this *Intel* prong); *Goenechea*, 2016 WL 560689 (holding that a request to a third-party for documents relating to the dispute within third-party's possession, custody or control was not unduly burdensome).

47.      As such, this factor favors granting the discovery request.  *See In re Application of Mesa Power Grp., LLC*, 878 F. Supp. 2d 1296, 1305 (S.D. Fla. 2012) (finding that Section

---

[3]      Applications for discovery under Section 1782 enjoy a presumption in favor of this factor.  *In re Application of Inversiones y Gasolinera Petroleos Valenzuela, S. de R.L.*, 2011 WL 181311, at *13.

1782 request was not intrusive or burdensome because the discovery was "relevant to the foreign proceeding"); *In re Qwest Commc'ns Int'l Inc.*, No. 3:08mc93, 2008 WL 2741111, at *5 (W.D.N.C. July 10, 2008) (finding that Section 1782 request was not burdensome because the subpoena was "narrowly tailored to produce information relevant to the issues . . . pending" before a foreign tribunal).

## CONCLUSION

48.    For the reasons set forth above, Applicants request that the Court enter an order authorizing the issuance of a subpoena in order to obtain documentary evidence from CCI for use in the ongoing Venezuelan criminal investigation and in the impending Swiss arbitration proceedings.  A copy of a proposed order is attached hereto as **Ex. 6**.

Dated this <u>24</u> day of August, 2018.

Respectfully submitted,

By: */s/ Carte P. Goodwin*
Carte P. Goodwin
WV Bar No. 8039
Elise N. McQuain
WV Bar No. 12253

**FROST BROWN TODD LLC**
500 Virginia St. East, Suite 1100
Charleston, WV 25301
Telephone:   (304) 348-2422
Facsimile:   (304) 345-0115
cgoodwin@fbtlaw.com
emcquain@fbtlaw.com

Richard C. Lorenzo
(*pro hac vice application forthcoming*)
Fla. Bar No. 71412

**HOGAN LOVELLS US LLP**

600 Brickell Ave., Suite 2700
Miami, FL 33131
Telephone:  (305) 459-6500
Facsimile:  (305) 459-6550
richard.lorenzo@hoganlovells.com

*Attorneys for Applicants Chemplast Steel*
*Industries Metals, Ltd. and Southern*
*Procurement Services Ltd.*

## VERIFICATION

I, Manuel Chinchilla, certify that I am the Chief Executive Officer of Southern Procurement Services LTD. ("SPS") and a Director of Chemplast Steel Industries, LTD. ("Chemplast"). I declare that I have read the foregoing Verified Application Pursuant to 28 U.S.C. §1782 for Order to Take Discovery in Aid of Foreign Proceedings and Supporting Memorandum of Law ("Verified Application"); that the factual allegations of the foregoing Verified Application are true and correct; and that the basis of my knowledge, information, and belief is personal knowledge, information from SPS's and Chemplast's business records and employees, and information shared with me in the ordinary course of SPS's and Chemplast's business activities.

I declare certify under penalty of perjury that the foregoing is true and correct.

Executed on August 21 , 2018

Manuel Chinchilla
Chief Executive Officer
Southern Procurement Services LTD.
Director
Chemplast Steel Industries, LTD.