## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

In re:  Application of CHEMPLAST STEEL
INDUSTRIES METALS, LTD. and
SOUTHERN PROCUREMENT SERVICES
LTD. for Assistance Before Foreign Tribunals

Case No.:   2:18-mc-00144

_____/

## NOTICE OF RULE 30(B)(6) DEPOSITION AND SUBPOENA TO
## CASTLETON COMMODITIES INTERNATIONAL LLC

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. § 1782 and Rule 30(b)(6) of the

Federal Rules of Civil Procedure, Applicants Chemplast Steel Industries Metals, LTD. and

Southern Procurement Services LTD. ("Applicants"), by and through undersigned counsel, will

take the deposition of the designated representative(s) of Castleton Commodities International

LLC  ("CCI") with respect to the topics set forth in **Schedule 1**.  The deposition shall take place

at the date, time and location specified below.

|   |   |
|---|---|
| **Date:** | September 13, 2018 |
| **Time:** | 9:30 am |
| **Location:** | FROST BROWN TODD LLC |
|   | 500 Virginia St. East, Suite 1100 |
|   | Charleston, WV 25301 |

The deposition will be held before a person authorized to administer an oath and will be

by oral examination for the purposes of discovery and evidence; for use in any motions or

hearings in the above-styled action; and for all other purposes permitted under the Federal Rules

of Civil Procedure.  The deposition will be recorded and is anticipated to be completed in one

day, but will continue from day to day until completed.

Applicants reserve the right to seek relief from the Court in the event that the designated deponent is not properly prepared to testify on behalf of CCI with respect to the identified topics.

PLEASE TAKE FURTHER NOTICE that, pursuant to Federal Rule of Civil Procedure 45, the subpoena attached as **Schedule 2** is being served upon CCI, commanding that it produce any and all documents in its possession, custody, or control as set forth in the subpoena on or before September 13, 2018.

Dated:  August 24, 2018

Respectfully submitted,

By: */s/ Carte P. Goodwin*
Carte P. Goodwin
WV Bar No. 8039

**FROST BROWN TODD LLC**
500 Virginia St. East, Suite 1100
Charleston, WV 25301
Telephone:   (304) 348-2422
Facsimile:    (304) 345-0115
cgoodwin@fbtlaw.com

Richard C. Lorenzo
(*pro hac vice application pending*)
Fla. Bar No. 71412

**HOGAN LOVELLS US LLP**
600 Brickell Ave., Suite 2700
Miami, FL 33131
Telephone:  (305) 459-6500
Facsimile:  (305) 459-6550
richard.lorenzo@hoganlovells.com

*Attorneys for Applicants Chemplast Steel
Industries Metals, Ltd. and Southern
Procurement Services Ltd.*

# SCHEDULE 1

## RULE 30(b)(6) TOPICS

### INSTRUCTIONS

1.      Whenever appropriate, the singular form of a word shall also be interpreted as plural, and the plural form of a word shall also be interpreted as singular.

2.      In answering these requests, you are required to furnish all documents available to you, including documents in possession of your agents, representatives, consulting or testifying experts, attorneys, and any other person or persons acting on your behalf.

3.      Unless otherwise indicated in a particular request, the time period covered by these requests is January 1, 2017 through the present.

### DEFINITIONS

1.      "And" and "or" are to be construed both conjunctively and disjunctively as necessary to make these request inclusive rather than exclusive.

2.      "Any" and "all" shall each mean "any and all."

3.       "CCI" means Castleton Commodities International LLC, and also includes its predecessors, subsidiaries, parents, and affiliates and its past and present officers, directors, partners, employees, agents, attorneys, and representatives, as well as all other persons acting or purporting to act on its behalf for any purpose whatsoever.

4.      "Chemplast" refers to Chemplast Steel Industries Metals, LTD. and also includes its predecessors, subsidiaries, parents, and affiliates and its past and present officers, directors, partners, employees, agents, attorneys, and representatives, as well as all other persons acting or purporting to act on its behalf for any purpose whatsoever.

5.      "Confidential Settlement Agreement" refers to an April 2018 settlement agreement entered into by Elemento, Ltd. ("Elemento"), Chemplast, and Southern Procurement Services Ltd. ("SPS").

6.      "Criminal Investigation" refers to any investigations that the Venezuelan government is conducting into CCI and/or Elemento (as well as any related proceedings) regarding or relating to:  (i) their practices relating to the transfer, purchase of, shipment, and/or storage of oil and other petroleum products; (ii) CCI's relationship with Elemento; (iii) CCI's relationship with Chemplast and/or SPS; and/or (iv) CCI's and Elemento's conduct and/or actions regarding any crude oil, petroleum cargo, or other cargo sold to Elemento by either Chemplast or SPS, especially as any of these relate to the Purchase Agreement (defined below).

7.      "Elemento" refers to Elemento, Ltd. and also includes its predecessors, subsidiaries, parents, and affiliates and its past and present officers, directors, partners, employees, agents, attorneys, and representatives, as well as all other persons acting or purporting to act on its behalf for any purpose whatsoever, and any person acting or purporting to act on its behalf.

8.      "Including" and "include" shall mean "including but not limited to."

9.      "PDVSA" refers to Petróleos de Venezuela, S.A., and also includes its predecessors, subsidiaries, parents, and affiliates and its past and present officers, directors, partners, employees, agents, attorneys, and representatives, as well as all other persons acting or purporting to act on its behalf for any purpose whatsoever, and any person acting or purporting to act on its behalf.

10.     "Petrodelta" refers to Petrodelta S.A., and also includes its predecessors, subsidiaries, parents, and affiliates and its past and present officers, directors, partners,

employees, agents, attorneys, and representatives, as well as all other persons acting or purporting to act on its behalf for any purpose whatsoever, and any person acting or purporting to act on its behalf.

11.     "Purchase Agreement" refers to the 2017 Purchase and Sale Agreement (ELE18102017) signed and entered into by Chemplast, SPS, and Elemento.

12.     "SPS" refers to Southern Procurement Services Ltd. and also includes its predecessors, subsidiaries, parents, and affiliates and its past and present officers, directors, partners, employees, agents, attorneys, and representatives, as well as all other persons acting or purporting to act on its behalf for any purpose whatsoever, and any person acting or purporting to act on its behalf.

## **TOPICS**

1.     CCI's knowledge of and/or involvement in the relationship or business dealings between Elemento, SPS, and Chemplast.

2.     CCI's communications with Elemento regarding SPS and/or Chemplast.

3.     CCI's communications with SPS or Chemplast regarding Elemento.

4.     CCI's knowledge of or involvement in the negotiation of the Purchase Agreement between Elemento, SPS, and Chemplast.

5.     Internal CCI communications regarding the Purchase Agreement.

6.     Communications between CCI and Elemento, SPS, or Chemplast regarding the Purchase Agreement.

7.     CCI's knowledge of or involvement in any and all communications, negotiations, or dealings related to December or January 2017 cargo shipments on the vessels Dukhan or NS Point, including knowledge of those shipments sold to a CCI entity, the routes of those ships, and the documentation related to those shipments.  The vessels Dukhan and NS Point originated in Venezuela and landed in the United States.

3

8.     CCI's business dealings, communications, and relationship with SPS and Chemplast, including with relation to shipments originating from Venezuela.

9.     CCI's business dealings, communications, and relationship with Elemento, including with relation to shipments originating from Venezuela.

10.    CCI's knowledge of or involvement in any and all communications, negotiations, or dealings related to payments for December 2017 or January 2018 shipments on the vessels Dukhan or NS Point originating in Venezuela and landing in the United States, including those shipments sold to a CCI entity.

11.    Communications between CCI and Elemento, SPS, or Chemplast regarding payments for December 2017 or January 2018 shipments on the vessels Dukhan or NS Point originating in Venezuela and landing in the United States, particularly those shipments sold to a CCI entity.

12.    CCI's knowledge of and/or involvement in the negotiation of the Confidential Settlement Agreement executed between Elemento, SPS, and Chemplast.

13.    Internal CCI communications regarding the Confidential Settlement Agreement.

14.    Communications between CCI and Elemento, SPS, or Chemplast regarding the Confidential Settlement Agreement.

15.    CCI's knowledge of and/or involvement in Elemento's failure to pay amounts due to SPS and/or Chemplast, including in connection with the Confidential Settlement Agreement and/or Purchase Agreement.

16.    Internal CCI communications regarding Elemento's failure to pay amounts due to SPS and/or Chemplast, including in connection with the Confidential Settlement Agreement and/or Purchase Agreement.

17.    Communications between CCI and Elemento, SPS, or Chemplast regarding Elemento's failures to pay amounts due to SPS and/or Chemplast, including in connection with the Confidential Settlement Agreement and/or Purchase Agreement.

18.    Communications between CCI executives or board members with Elemento.

19.    CCI's business dealings, communications, and relationship with PDVSA, specifically related to any shipments to the United States.

20.    CCI's business dealings, communications, and relationship with Petrodelta, specifically related to Elemento, any representative of Elemento, or any shipments to the United States.

21.    CCI's knowledge of and/or involvement in any Criminal Investigation being conducted by the Venezuelan government.

22.    Internal CCI communications concerning any Criminal Investigation being conducted by the Venezuelan government.

23.    CCI's communications with Elemento regarding any Criminal Investigation being conducted by the Venezuelan government.

# SCHEDULE 2

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of West Virginia

In re: Application of CHEMPLAST STEEL
INDUSTRIES METALS, LTD. and
SOUTHERN PROCUREMENT SERVICES
LTD. for Assistance Before Foreign Tribunals

| | |
|---|---|
| _Plaintiff_ | ) |
| v. | ) Civil Action No. _____ |
| | ) |
| | ) |
| _Defendant_ | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  Castleton Commodities International LLC, C/O Corporation Service Company
209 West Washington Street, Charleston, WV 25302 CHARLESTON, WV, 25302

_(Name of person to whom this subpoena is directed)_

☑ _Testimony:_ **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: FROST BROWN TODD LLC, 500 Virginia St. East, Suite 1100, Charleston, WV 25301 | Date and Time:<br>September 13, 2018, 9:30 AM |
|---|---|

The deposition will be recorded by this method:  Stenographic

☑ _Production:_ You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See Exhibit A, attached hereto.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  08/24/2018

CLERK OF COURT

OR

_____
_Signature of Clerk or Deputy Clerk_

_____
_Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_  CHEMPLAST
STEEL INDUSTRIES METALS, LTD & SOUTHERN PROCUREMENT SERVICES LTD. , who issues or requests this subpoena, are:
Richard Lorenzo, Hogan Lovells US LLP, 600 Brickell Ave. Ste 2700, Miami, FL 33131, (305) 459-6674,
richard.lorenzo@hoganlovells.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. _____

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) *For Other Discovery.*** A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) *Command to Produce Materials or Permit Inspection.***
   **(A) *Appearance Not Required.*** A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B) *Objections.*** A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) *Quashing or Modifying a Subpoena.***

   **(A) *When Required.*** On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B) *When Permitted.*** To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C) *Specifying Conditions as an Alternative.*** In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
   **(A) *Documents.*** A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B) *Form for Producing Electronically Stored Information Not Specified.*** If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C) *Electronically Stored Information Produced in Only One Form.*** The person responding need not produce the same electronically stored information in more than one form.
   **(D) *Inaccessible Electronically Stored Information.*** The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) *Claiming Privilege or Protection.***
   **(A) *Information Withheld.*** A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B) *Information Produced.*** If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A

## <u>INSTRUCTIONS</u>

1.      Whenever appropriate, the singular form of a word shall also be interpreted as plural, and the plural form of a word shall also be interpreted as singular.

2.      In producing documents and other materials, you are requested to furnish all responsive documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, agents, employees, representatives, subsidiaries, managing agents, affiliates, investigators, or by your attorneys or their agents, employees, representatives, or investigators.

3.      Each requested document shall be produced in its entirety, without abbreviation or redaction, and shall include all attachments, appendices, exhibits, lists, schedules, or other documents at any time affixed thereto.  If any of the requested documents cannot be produced in full, produce them to the extent possible, and specify the reason for your inability to produce the remainder, stating whatever information, knowledge or belief you have concerning the unproduced portions.

4.      If any part of a document is responsive to any request, the whole document is to be produced. Each document shall be produced in its entirety, including any attachments. No non-privileged material shall be redacted.

5.      If any document is withheld on the basis of any claim of privilege or work product, set forth the following information: (1) authors, (2) recipients, (3) date of the document or the date upon which the document was produced, (4) description of the subject matter of the document, and (5) the grounds for asserting the claim of privilege or work product.

6.      In responding to these requests, please produce the documents as they are kept in the usual course of business or organize and label them to correspond with the categories of these requests.

7.      Any alteration of a responsive document, including any marginal notes, handwritten notes, underlining, date stamps, received stamps, endorsed or filed stamps, drafts, revisions, modifications, and other versions of a final document is a separate and distinct document, and it must be produced.

8.      When information with respect to a corporation, partnership, limited liability company, or unincorporated association or entity is called for in the Requests, such reference shall be construed to include information with respect to that entity and any and all predecessors and successors in interest, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, accountants, and all other persons or entities acting on its behalf or under its control.

9.      These requests are continuing in nature. If you, subsequent to your initial response to this set of requests, discover or locate any additional documents not previously produced but which properly would have been produced if the documents had been known or available to you at the time of your initial response, such additional information shall be supplied by supplemental response.

10.     Unless otherwise indicated in a particular request, the time period covered by these requests is January 1, 2017 through the present.

## DEFINITIONS

1.      "And" and "or" are to be construed both conjunctively and disjunctively as necessary to make these request inclusive rather than exclusive.

2.      "Any" and "all" shall each mean "any and all."

3.      "Communication" means any exchange of words, thoughts, or ideas whether orally, by documentation, or by other means, including all electronic means.

4.      "CCI" means Castleton Commodities International LLC, and also includes its predecessors, subsidiaries, parents, and affiliates and its past and present officers, directors, partners, employees, agents, attorneys, and representatives, as well as all other persons acting or purporting to act on its behalf for any purpose whatsoever.

5.      "Chemplast" refers to Chemplast Steel Industries Metals, LTD. and also includes its predecessors, subsidiaries, parents, and affiliates and its past and present officers, directors, partners, employees, agents, attorneys, and representatives, as well as all other persons acting or purporting to act on its behalf for any purpose whatsoever.

6.      "Confidential Settlement Agreement" refers to an April 2018 settlement agreement entered into by Elemento, Ltd. ("Elemento"), Chemplast, and Southern Procurement Services Ltd. ("SPS").

7.      "Criminal Investigation" refers to any investigations that the Venezuelan government is conducting into CCI and/or Elemento (as well as any related proceedings) regarding or relating to:  (i) their practices relating to the transfer, purchase of, shipment, and/or storage of oil and other petroleum products; (ii) CCI's relationship with Elemento; (iii) CCI's relationship with Chemplast and/or SPS; and/or (iv) CCI's and Elemento's conduct and/or

actions regarding any crude oil, petroleum cargo, or other cargo sold to Elemento by either Chemplast or SPS, especially as any of these relate to the Purchase Agreement (defined below).

8.      "Document" is used in its broadest sense and shall mean, without limitation, any written, typed, graphic, or printed matter, in its entirety, including any addenda, supplements, amendments, revisions, exhibits, and appendices thereto, and in its original form (or copies thereof where originals are unavailable), together with any copies thereof bearing notations, memoranda, or other written information not on the original, including, but not limited to, correspondence, memoranda, notes, drafts, records, letters, envelopes, telegrams, teletypes or telecopy messages, facsimile messages, contracts, agreements, statistical statements and records, financial statements, trade letters, press releases, plans, schedules, comparisons, telephone logs and messages, articles, magazines, newspapers, resolutions, minutes or transcripts of meetings, inter-office and intra-office communications, electronic mail/message, charts, graphs, photographs, audio recording, films, tapes, discs and diskettes, data cells, print-outs, computer input data, computer output data, computer runs, including without limitation, electronically sensitive storage media such as microfiche, microfilm, computer disk, magnetic tapes, including any deleted files and any archived files, and any preliminary data or revisions of the foregoing, or other tangible things which constitute or contain matters within the scope of the Federal Rules of Civil Procedure, and which are within the possession, custody, or control of you or any past or present agent, employee, consultant, attorney, or any other person acting on your behalf.

9.      "Elemento" refers to Elemento, Ltd. and also includes its predecessors, subsidiaries, parents, and affiliates and its past and present officers, directors, partners, employees, agents, attorneys, and representatives, as well as all other persons acting or

purporting to act on its behalf for any purpose whatsoever, and any person acting or purporting to act on its behalf.

10.    "Including" and "include" shall mean "including but not limited to."

11.    "PDVSA" refers to Petróleos de Venezuela, S.A., and also includes its predecessors, subsidiaries, parents, and affiliates and its past and present officers, directors, partners, employees, agents, attorneys, and representatives, as well as all other persons acting or purporting to act on its behalf for any purpose whatsoever, and any person acting or purporting to act on its behalf.

12.    "Petrodelta" refers to Petrodelta S.A., and also includes its predecessors, subsidiaries, parents, and affiliates and its past and present officers, directors, partners, employees, agents, attorneys, and representatives, as well as all other persons acting or purporting to act on its behalf for any purpose whatsoever, and any person acting or purporting to act on its behalf.

13.    "Purchase Agreement" refers to the 2017 Purchase and Sale Agreement (ELE18102017) signed and entered into by Chemplast, SPS, and Elemento.

14.    "SPS" refers to Southern Procurement Services Ltd. and also includes its predecessors, subsidiaries, parents, and affiliates and its past and present officers, directors, partners, employees, agents, attorneys, and representatives, as well as all other persons acting or purporting to act on its behalf for any purpose whatsoever, and any person acting or purporting to act on its behalf.

5

## DOCUMENTS REQUESTED

1.     Any and all documents relating to, reflecting, or concerning CCI's relationship with Elemento, including any and all documents relating to, concerning, or discussing Elemento's role as CCI's distributor and/or representative in Venezuela.

2.     Any and all documents relating to, reflecting, or concerning CCI's relationship with Chemplast and/or SPS.

3.     Any and all documents exchanged between CCI and Elemento concerning or relating to:

    a.   Chemplast;

    b.   SPS;

    c.   the Purchase Agreement;

    d.   cargo shipped in December 2017 or January 2018 on the vessels Dukhan or NS Point from Venezuela to the United States, including any shipments sold to any CCI entity;

    e.   amounts owed or payment for cargo shipped in December 2017 or January 2018 on the vessels Dukhan or NS Point from Venezuela to the United States that were sold to any CCI entity;

    f.   documentation related to cargo shipped in December 2017 or January 2018 on the vessels Dukhan or NS Point from Venezuela to the United States;

    g.   the routes of the vessels Dukhan or NS Point carrying cargo from Venezuela to the United States in December 2017 or January 2018;

    h.   inspection reports or demurrage invoices relating to the vessels Dukhan or NS Point issued in December 2017 or January 2018;

6

    i.   payments due or purported to be paid by Elemento under the Purchase Agreement;

    j.   the Confidential Settlement Agreement;

    k.   payments due or purported to be paid by Elemento under the Confidential Settlement Agreement;

    l.   PDVSA;

    m.  any Criminal Investigation; or

    n.   Petrodelta.

4.      Any and all documents exchanged between CCI and Chemplast or SPS concerning or relating to:

    a.   Elemento;

    b.   the Purchase Agreement;

    c.   cargo shipped in December 2017 or January 2018 on the vessels Dukhan or NS Point from Venezuela to the United States, including any shipments sold to any CCI entity;

    d.   amounts owed or payment for cargo shipped in December 2017 or January 2018 on the vessels Dukhan or NS Point from Venezuela to the United States that were sold to any CCI entity;

    e.   documentation related to cargo shipped in December 2017 or January 2018 on the vessels Dukhan or NS Point from Venezuela to the United States;

    f.   the routes of the vessels Dukhan or NS Point carrying cargo from Venezuela to the United States in December 2017 or January 2018;

 g. inspection reports or demurrage invoices relating to the vessels Dukhan or NS Point issued in December 2017 or January 2018;

 h. payments due or purported to be paid by Elemento under the Purchase Agreement;

 i. the Confidential Settlement Agreement;

 j. payments due or purported to be paid by Elemento under the Confidential Settlement Agreement;

 k. PDVSA;

 l. any Criminal Investigation; or

 m. Petrodelta.

5. Any and all documents exchanged between CCI and PDVSA concerning or related to:

 a. SPS;

 b. Chemplast;

 c. Elemento;

 d. the Purchase Agreement;

 e. cargo shipped in December 2017 or January 2018 on the vessels Dukhan or NS Point from Venezuela to the United States, including any shipments sold to any CCI entity;

 f. amounts owed or payment for cargo shipped in December 2017 or January 2018 on the vessels Dukhan or NS Point from Venezuela to the United States that were sold to any CCI entity;

g.   documentation related to cargo shipped in December 2017 or January 2018 on the vessels Dukhan or NS Point from Venezuela to the United States;

h.   the routes of the vessels Dukhan or NS Point carrying cargo from Venezuela to the United States in December 2017 or January 2018;

i.   inspection reports or demurrage invoices relating to the vessels Dukhan or NS Point issued in December 2017 or January 2018;

j.   payments due or purported to be paid by Elemento under the Purchase Agreement;

k.   the Confidential Settlement Agreement;

l.   payments due or purported to be paid by Elemento under the Confidential Settlement Agreement;

m.   PDVSA;

n.   the Criminal Investigation; or

o.   Petrodelta.

6.   Any and all internal documents exchanged within CCI concerning or related to:

a.   SPS;

b.   Chemplast;

c.   Elemento;

d.   the Purchase Agreement;

e.   cargo shipped in December 2017 or January 2018 on the vessels Dukhan or NS Point from Venezuela to the United States, including any shipments sold to any CCI entity;

f.   amounts owed or payment for cargo shipped in December 2017 or January 2018 on the vessels Dukhan or NS Point from Venezuela to the United States that were sold to any CCI entity;

g.   documentation related to cargo shipped in December 2017 or January 2018 on the vessels Dukhan or NS Point from Venezuela to the United States;

h.   the routes of the vessels Dukhan or NS Point carrying cargo from Venezuela to the United States in December 2017 or January 2018;

i.   inspection reports or demurrage invoices relating to the vessels Dukhan or NS Point issued in December 2017 or January 2018;

j.   payments due or purported to be paid by Elemento under the Purchase Agreement;

k.   the Confidential Settlement Agreement;

l.   payments due or purported to be paid by Elemento under the Confidential Settlement Agreement;

m.  PDVSA;

n.   the Criminal Investigation; or

o.   Petrodelta.

7.   Any and all documents exchanged by or within CCI discussing, reflecting, or relating to the Purchase Agreement.

8.   Any and all documents exchanged by or within CCI discussing, reflecting, or relating to cargo shipped in December 2017 or January 2018 on the vessels Dukhan or NS Point from Venezuela to the United States, including documents concerning any shipment sold to any CCI entity.

10

9.     Any and all documents exchanged by or within CCI discussing, reflecting, or relating to amounts owed or payment for cargo shipped in December 2017 or January 2018 on the vessels Dukhan or NS Point from Venezuela to the United States.

10.     Any and all documents exchanged by or within CCI discussing, reflecting, or relating to documentation related to cargo shipped in December 2017 or January 2018 on the vessels Dukhan or NS Point from Venezuela to the United States for sale to a CCI entity.

11.     Any and all documents exchanged by or within CCI discussing, reflecting, or relating to the routes of the vessels Dukhan or NS Point carrying cargo from Venezuela to the United States in December 2017 or January 2018.

12.     Any and all documents exchanged by or within CCI discussing, reflecting, or relating to inspection reports or demurrage invoices relating to the vessels Dukhan or NS Point issued in December 2017 or January 2018.

13.      Any and all documents exchanged by or within CCI discussing, reflecting, or relating to the Confidential Settlement Agreement.

14.     Any and all documents exchanged by or within CCI discussing, reflecting, or relating to Elemento's failure to pay amounts due under the Purchase Agreement.

15.     Any and all documents exchanged by or within CCI discussing, reflecting, or relating to Elemento's failure to pay amounts due under the Confidential Settlement Agreement.

16.     Any and all documents provided by CCI to the Venezuelan government in connection with the Criminal Investigation.

17.     Any and all documents exchanged between CCI and Oswaldo Cisneros Fajardo discussing, reflecting, or relating to Elemento and its relationship with Chemplast and/or SPS.

11

18.     Any and all documents exchanged between CCI and Oswaldo Cisneros Fajardo discussing, reflecting, or relating to the Purchase Agreement.

19.     Any and all documents exchanged between CCI and Oswaldo Cisneros Fajardo discussing, reflecting, or relating to payments owed by Elemento to Chemplast and/or SPS.

20.     Any and all documents exchanged between CCI and Oswaldo Cisneros Fajardo discussing, reflecting, or relating to any disputes between Elemento and Chemplast and/or SPS.

21.     Any and all documents exchanged between CCI and Oswaldo Cisneros Fajardo discussing, reflecting, or relating to the Confidential Settlement Agreement.